UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| CHESTER AMBURGEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 07-156-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | **MEMORANDUM OPINION** |
| Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*     \*\*\*     \*\*\*     \*\*\*

Through this action, Plaintiff Chester Amburgey ("Amburgey")
seeks to reverse the decision of an administrative law judge
("ALJ") concluding that he is not entitled to disability insurance
benefits.  However, Defendant Michael J. Astrue, Commissioner of
Social Security ("the Commissioner"), contends that the ALJ's
decision is supported by substantial evidence and should be
affirmed.

The matter is pending for consideration of cross-motions for
summary judgment.  [Record Nos. 10 and 13]  Because the Court
concludes that the Commissioner's decision is supported by
substantial evidence, and because Amburgey's motion for summary
judgment is without merit, the Commissioner's motion will be
granted and the relief sought by Amburgey will be denied.

-1-

I.    BACKGROUND

Amburgey filed his application for disability insurance benefits on October 19, 2000. [See Transcript (Tr.), at pp. 90-92; hereafter, "Tr., at p.___"] This claim was denied initially and upon reconsideration.     Thereafter, Adkins requested an administrative hearing before an ALJ.     ALJ Ronald M. Kayser conducted three hearings on January 24, 2002, March 7, 2002, and February 11, 2003.

On May 23, 2003, ALJ Kayser issued a decision finding Amburgey capable of performing a limited range of medium work. [Tr., at pp. 58-65] This determination was subsequently remanded by the Appeals Council because ALJ Kayser did not adequately address the medical opinion of Dr. James Templin. [Tr., at pp. 243-45] As a result, a fourth administrative hearing was held before ALJ Kayser on June 24, 2005. [Tr., at pp. 366-95] The Claimant appeared at the fourth administrative hearing accompanied by counsel.  Both the Claimant and Vocational Expert ("VE") Betty Hale testified at the June 24th hearing.

After considering all the evidence presented, including the report of Dr. Templin and the testimony of VE Hale, the ALJ again concluded that Amburgey was not "disabled" under the Social Security Act.    [Tr., at pp. 27-34]  In support of this determination, the ALJ found that Amburgey had the residual functional capacity to perform a significant range of light work,

-2-

subject to a number of restrictions. [Tr., pp. 33-34] Amburgey's request for review of this decision was denied by the Appeals Council on December 1, 2006. [Tr., pp. 13-15]

At the time of the most-recent administrative hearing, Adkins was 51 years-old with a twelfth grade education and training as a welder. [Tr., p. 17] He has past work experience as a custodian. [Tr., p. 17] Amburgey previously underwent back surgery that did not result in disability. However, he claims that, in March 2000, he suffered a work-related injury while shoveling coal. [Tr., p. ] After a careful review and evaluation of the medical evidence of record and testimony at the hearing from the Claimant and the VE, the ALJ found that this alleged injury – as well as his claim of illiteracy and subjective complaints of pain – did not result in him becoming disabled under the Social Security Act. [Tr., p. 28-30]

## II.   LEGAL STANDARD

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the

-3-

claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work.  If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal

-4-

standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human*

*Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

**III. DISCUSSION**

Amburgey raises one claim in this action. He asserts that the ALJ misinterpreted SSR 96-6p in connection with his evaluation of the report of Dr. Templin. Specifically, Amburgey argues that, because the ALJ concluded that he was "contrained" by this Social Security Ruling to accept the Kentucky Disability Determinations Services' finding that he was capable of performing medium work absent "compelling reasons to the contrary," he imposed a incorrect burden on the Claimant to establish that he could not perform such

-6-

work.  Instead, the Claimant contends that SSR 96-6p requires that the findings of a state agency reviewing physician be treated as the opinion of a non-examining expert opinion.[1]  Amburgey asserts that this error is not harmless because of the spill-over effect in rejecting other evidence indicating a potential disability.

In response, the Commissioner, asserts that the ALJ properly considered and rejected the medical opinion of Dr. Templin based on other compelling evidence of record.  The Commissioner also points out that, notwithstanding the weight to be given to physician's opinions, the opinions on some issues (such as whether the Claimant is disabled and his RFC) are not medical opinions but opinions on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  *See also Warner v. Commissioner of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004) ("the determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").

---

[1]     The language of SSR 96-6-p upon which Amburgey relies provides as follow:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

[Record No. 10, p.4]

Dr. Templin examined Amburgey on April 16, 2001, in connection with his workers' compensation claim. [Tr., at 209-13] During this examination, Amburgey exhibited a decreased range of motion in the lumbar section of his back.  However, his flexion and reflexes were described as normal.  Dr. Templin diagnosed Amburgey as having *inter alia,* chronic low back pain with a history of lumbar disc herniation, post-operative scar tissue adhesion, right leg radiculopathy, and degenerative disc disease.  As a result, he limited Amburgey from lifting more than 5-20 pounds and from walking for more than 30 minutes at a time or for more than 2 of 8 hours. [Tr., at p. 213]  He further restricted Amburgey from sitting for more than one hour at a time, for 5-6 of 8 hours, with no bending, stooping, kneeling, crouching, or climbing for more than 30 minutes during an 8 hour period.  Finally, he determined that Amburgey could not operate repetitive foot controls and should avoid working in cold, damp environments or riding in or on vibrating vehicles. [Tr., a p. 213]

When the ALJ's opinion is read in context and in its entirety, the Court must reject Amburgey's argument that the ALJ failed to properly consider Dr. Templin's opinion.  Dr. Templin's report and conclusions are addressed in the portion of the ALJ's decision discussing Amburgey's back pain.  In relevant part, the ALJ made the following determinations:

> Dr. James Templin of the Department of Workers Claims (Exhibit 6F) completed an RFC indicating that Mr.

-8-

Amburgey could do light work except that he was unable to do so for any distance or time. He was unable to lift weights over five pounds from floor level with no frequent or repetitive lifting from floor level. He could not walk/stand over 30 minutes at one time or two hours per eight-hour timeframe. He could not bend, stoop, kneel, crouch or climb over 30 minutes total in an eight-hour time frame. He could not repetitively operate foot controls and should avoid repeated exposure to cold or damp environments and vibration.

Since the Administrative Law Judge found claimant capable of limited medium work, Dr. James Templin's report is obviously not being accorded controlling weight. For one thing it is inconsistent with the MRI of Exh. 13F done 06/17/04, noting only degenerative changes with mild relative bilateral neural foraminal encroachment and loss of lordosis. No further surgery is indicated, according to Dr. John Gilbert, neurosurgeon. A further point is that the Kentucky Disability Determinations Services found him capable of medium work and the undersigned is constrained by Social Security Ruling 96-6p to accept this as controlling evidence absent **compelling reason to the contrary**.[2] No such compelling material is of record herein. As earlier MRI of 01/24/03 resulted in impression of prior surgery at L5-S1 and a small focal central disc herniation at L4-5. A still earlier MRI of 04/11/99 notes post-operative scar tissue along the nerve roots at L5-S1. (5F) Dr. Rita Ratliff examined him on 12/02/00 and found no restrictions.

Returning to Dr. Templin's report, the Administrative Law Judge is not constrained to give it controlling weight. The RFC accompanying the consultative evaluation of Dr. James Templin, Exhibit 6F, is accorded scant weight herein because it is at odds with the narrative report of the examiner, the record as a whole, and represents a conclusion reserved to the Commissioner (Social Security Ruling 96-5p). Moreover, the case law in the U. S. Sixth Circuit does not require the Administrative Law Judge to accept the conclusory opinions of physicians, where they are not adequately supported by objective criteria and

---

[2]   Notwithstanding the ALJ's comment that he was constrained to accept the state agency determination that Amburgey could perform medium work absent compelling evidence to the contrary, the ALJ subsequently assigned Amburgey a RFC to perform a limited range of light work. [Tr., at p. 31]

documentation.   (**<u>Cohen</u> v. <u>Secretary</u>**, 964 F.2d 524, 6th Cir. 1992 citing **<u>Duncan</u> v. <u>Secretary</u>**, 801 F.2d 847, 6th Cir. 1986).

[Tr., at pp. 28-29]

Based on the foregoing, it is clear that the ALJ completely examined Dr. Templin's report in the context of the other medical evidence of record and gave it the same consideration as properly given to the reports of non-examining physicians.   Clearly, Dr. Templin's opinion was not ignored but was fully evaluated and rejected for legitimate reasons.

Substantial evidence also supports the ALJ's decision to reject Amburgey's claims of disabling pain and illiteracy.   In addressing the issue of "other pain," the ALJ referenced an independent medical evaluation performed on June 28, 2000, which concluded normal motor functioning, but symptom magnification. [Tr., at p. 29] The notes of this evaluation indicate,

> [Claimant] walks on heels and toes without deficit. Motor function is essentially normal.  He complains of some pain in the right lower extremity when walking normally and limps.  However, when he left the building he did not limp, walked to the car, put his x-rays in the trunk and got in on the passenger side without apparent difficulty.
>             **       **       **
> He has a mild bulge at L4-5 of no clinical significance with no evidence of axial views or either lateralization or a nerve root or foramen occlusion . . .   This is normal post-discectomy MRI scan.

[Tr., at p. 29] As the ALJ concluded, the finding is consistent with the finding of Dr. Ratliff that Amburgey's whole person impairment was 0%.

-10-

Based on the evidence of record, the ALJ concluded that Amburgey's claims of pain were not disabling.  In summary, ALJ Kayser found:

> In concluding that claimant's impairment is not of sufficient severity to preclude engagement in a limited range of light work – note this change from the first decision – the Administrative Law Judge does not intend to minimize any pain which may be experienced or that work might produce.  In attempting to assess the functional limitations imposed by such pain, however, the Administrative Law Judge must rely upon the medical facts and clinical findings which would bear on this question. In this case, the medical evidence does not document a continuing impairment of incapacitating proportions, i.e., one which would produce pain of such intensity that the ordinary physical activity necessarily to perform basic work-related functions would be impossible or contraindicated for a continuous period or twelve months or more.  The Administrative Law Judge does not imply that claimant is symptom-free, but a review of the evidence in this case persuades the undersigned that claimant's complaints of pain and incapacitation are not credible when viewed in the light of the medical findings and claimant's own testimony.

[Tr., at p. 29-30]

Substantial evidence also supports the ALJ's determination that Amburgey was not truthful in asserting that he is illiterate. In discounting the conclusions reached by Dr. Gary Maryman (Exhibit 7F), the ALJ noted that Dr. Maryman does not have the same degree of "longitudinal experience" with Amburgey, having seen him only one time, whereas the ALJ has known him since January 24, 2004. [Tr., at p. 30] Based on this knowledge, the ALJ assessed the Claimant's credibility as "zero."  According to the ALJ, Amburgey

has "changed his testimony numerous times throughout both written and oral records."

> At the 06/24/05 hearing [Amburgey] stated he took the oral driver's license test but at the third hearing he testified (under oath) it was written. He states at the penultimate hearing he is a certified welder which required reading books and taking tests. At the 06/24/05 hearing he skipped, vacillated, and adroitly evaded the issue, saying he was certified by attending summer school. I read his job description to him (12E). Included are ability to "perform heavy physical labor" and "communicate effectively both orally and in writing." His only admission was that he could read a water meter and not the chloride level in a test tube. I read his school grades to him (Exh. 9E, he admits no special education). He is certainly not illiterate and Dr. McKeown stated the scores registered by Dr. Maryman are valid but no deficits in adaptive behavior of mild mental retardation and the general tenor of Exh. 7F in which Dr. Maryman passively accepts as face value claimant's statements, test scores, and "apparent loss of self-esteem."

[Tr., at p. 30] After citing other examples affecting the ALJ's determination, he concludes that Amburgey's subjective complaints are not credible. Again, substantial evidence supports this conclusion.

Finally, notwithstanding the ALJ's earlier conclusions, he assigned a residual functional capacity to Amburgey for a limited range of light (as opposed to medium) work. [See Finding No. 4; Tr., at p. 33] However, the VE concluded that work existed in the national and regional economies that a hypothetical claimant with the restrictions identified by the ALJ could perform. [Tr., at pp. 31-33] In summary, the Court finds that the ALJ's assessment of

-12-

the Claimant's capability to perform a range of light work is supported by substantial evidence.

**IV.   CONCLUSION**

For the reasons discussed herein, it is **ORDERED** as follows:

(1)  Claimant's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(2)  The Commissioner's Motion for Summary Judgment [Record No. 13] is **GRANTED**; and

(3)  The administrative decision of the Commissioner will be **AFFIRMED** by separate judgment entered this date.

This 22th day of January, 2008.



Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**